C. WALLACE, Superintendent Western & Atlantic Railroad, plaintiff in error, *vs.* N. ROSENTHAL, defendant in error.

An understanding or custom between connecting railroads, that when the cars of one road are switched off upon the track of the other, the said other road is responsible for the freight, although receipts are not given till the freight has been examined, checked, and found all right, or the deficiency noted, is a good and valid custom as between the roads, but under section 2058 of our Code, does not bind the owner of the goods. The last company receipting for the goods "in good order," is responsible to the owner if they are lost or damaged before examined and transferred to the connecting road.

Common-carriers.     Before Judge POPE.     Fulton Superior Court.     May Term, 1870.

Rosenthal sued Wallace, as Superintendent of the Western & Atlantic Railroad, for loss of certain goods lost by said railroad. He obtained a verdict, and the defendant asked for a new trial upon several grounds, but a new trial was refused. But one point was passed upon by this Court. It appeared that the goods were shipped from Nashville, Tennessee, consigned to Columbus, Georgia, and were received in good order by defendant at Chattanooga, and stolen in Atlanta. The question of dispute was whether said defendant delivered them to the connecting road, the Atlanta & West Point Railroad, it being conceded that such delivery would exonerate the defendant.

DOOLY, the Master of Transportation of said defendant, testified that defendant delivered the car containing said goods to the said connecting road upon the evening of its arrival in Atlanta, and said car was in the custody of the agents of the connecting road from Friday evening till Sunday morning; that it was the duty of said connecting road to receive and transfer freight as soon as possible into their own cars, and this usually required from twelve to twenty-four hours; that when freight is checked out of a car the connecting road returns the car.

JOHN B. PECK testified, that he had been for twenty-one years connected with railroads, last as Master of Transporta-

tion of the Western & Atlantic Railroad, and that the road in possession of goods, delivers to the connecting road, in Atlanta, by placing the cars containing the goods on the track of the receiving road, from which they are transferred into the cars of the connecting road; when the cars are put by the delivering road on the track of the receiving road, the safe custody of the cars devolves upon the receiving road; according to custom, the delivery to the receiving road takes place when the cars containing the goods are placed on the track of the receiving road; they are then guarded by the watchman on the receiving road until the goods are checked out, and the officers and employees of the delivering road have no custody of them whatever after the cars are so placed for a transfer of freight. If, in checking, out any goods called for by the manifest are missing, and the car shows no signs of having been broken open, or entered by an unauthorized person, the delivering road is liable for the deficiency, as it is presumed that there is an error in the manifest. But if the car is broken, or any signs of wrongful entry appear, the receiving road is held responsible, inasmuch as the car was in its custody, and the blame of the theft rests with its employees. Connecting roads receiving goods by car loads are considered responsible for their safety until checked out, and they are checked out to see that they agree with the freight list, and to fix "shortage," if there be any, upon the proper road. The receiving road is responsible for goods whether in good or bad order, and if the receiving road fail to guard the cars delivered to it, it pays for the loss anyhow.

The Agent of the Georgia Railroad at Atlanta testified to the custom about as laid down by Peck, "except when the car is necessarily kept over all night before the freight is checked out," and with this addition, "connecting roads hold themselves responsible only for such goods as are checked out in good order, unless it can be shown that the damage occurred on their road; if the loss cannot be located, it is prorated."

The Agent of the Macon & Western Railroad Company at Atlanta testified, that the receiving road only holds itself

liable for goods checked out in good order, except when it appears that the car has been broken open while on their tracks, and with him agreed the Agent of the Atlanta & West Point Railroad Company at Atlanta.

On Sunday morning the car was sent back to the Western & Atlantic Railroad, a window in it was loose, and goods had been stolen from it.

The Court charged the jury that when freights pass over different connecting roads, the last roads receiving the goods as "in good order," is liable to the consignee for any loss or damage done to the goods; if defendant received the goods, as one of a line of connecting roads, the burden is upon defendant to show that the goods were delivered to the next connecting road in good order. It is said that this charge is erroneous, and that the Court should have charged that the delivery of the car to the connecting road in apparent good order would be presumptive evidence of the good order of the contents of the car.

When the cause was called for a hearing here, a motion was made to dismiss the bill of exceptions, because the errors were not specified in it. The errors were specifically set out in the motion for a new trial, and the complaint in the bill of exceptions was the refusal of a new trial. The motion was overruled.

FARROW & SIMPSON, P. L. MYNATT, for plaintiff in error.

COLLIER & HOYT, for defendant in error.

McCAY, J.

Various questions are made in this bill of exceptions upon the rulings of the Judge as to the admissibility of testimony, which we do not pass upon, because we think that had the evidence been admitted, it would not have made out a defense against the claim of the plaintiff below.

Let it be admitted that the Western & Atlantic Railroad received these goods in good order at Chattanooga, brought them to Atlanta, and that the car containing them was

switched off the track of that road upon the track of the Atlanta & West Point Road, and was taken charge of by the latter road. Let it be admitted, also, that, by the custom of the roads, the Atlanta & West Point Road became responsible for the freight thus in their charge. Now add to this what also appears in evidence, to-wit: that by the custom of the roads goods are not *receipted for* until the checking clerks have compared the freight with the bills, and found all right, etc. Under such circumstances we do not think that, under our law, the Western & Atlantic Road has relieved itself from the obligation it has taken upon itself by the proof. Section 2058 of the Code provides that in the case of through freight over connecting railroads, the last road *receipting for the goods in good order*, should be responsible to the owner for loss or damage of them. We do not say that the Western & Atlantic Railroad was bound to procure an actual receipt from the Atlanta & West Point Road, but it *was* bound for the goods to the owner until, by the custom of the roads, it was *entitled* to such a receipt. This, it is admitted, was not, until there had been an examination by the mutual clerks, and the freight found all right. The object of the statute was to fix the "receipt" as the evidence of delivery in "good order," and protect the shipper from the expense and trouble of seeing settled just such disputes as perhaps exists in this case between the roads.

When the car is switched off, the road upon whose track it is becomes "responsible," not to the owner of the freight, but to the owner of the car; that road must take care of it, and if any damage happens, the road from which the car last came has its remedy. There is no delivery of the *goods* until, under the custom, the road to which they are delivered has given a receipt, or is, by the custom, bound to give it. This, as we understand the proof, is not until the checking clerks have examined the freight, compared it with the lists, and found all right. When this has been done the connecting road receipts for the goods, or is bound so to do. Until this takes place, we hold that the last road giving the receipt is bound to the owner. We think this is the meaning

of the Code. These roads may make a custom good among themselves, they may make themselves responsible to each other, but they cannot drive the shipper to litigate their controversies. By the law he is entitled to a receipt, or to such a performance by the last road receipting, as *entitles* him to a receipt from the next road. This, as the proof shows, the Western & Atlantic Railroad has not complied with; there had been no examination by the checking clerks, and no transfer.

Judgment affirmed.